(610 P.2d 649)

No. 50,957

DANIEL COCHRANE, *Appellant,* v. STATE OF KANSAS, *Appellee.*

Opinion filed May 9, 1980.

Roger L. Unruh, of Junction City, for the appellant.

Keith D. Hoffman, county attorney, and Robert T. Stephan, attorney general, for the appellee.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

MEYER, J.: This is an appeal from the district court's denial of plaintiff's application for relief made pursuant to K.S.A. 60-1507.

On April 10, 1975, complaints were filed against plaintiff and four other persons, charging each of them with the crimes of aggravated robbery, contrary to K.S.A. 21-3427, and aggravated assault, contrary to K.S.A. 21-3410. The accompanying affidavits for arrest warrants recite that on March 24, 1975, plaintiff and Steve Watts entered a cafe in Detroit, Kansas, in order to commit a robbery. Watts was armed with a shotgun and plaintiff appeared to be carrying a handgun, although he later stated it was a toy

gun. While the robbery was in progress, Norman Peart stood guard outside the cafe while James Hodges and Donna Martin waited in the "getaway" vehicle. Plaintiff and Watts took some beer, several checks and an amount of currency from the cafe and proceeded to the car where the group was waiting. One account of the incident suggests that a shot was fired from the vehicle a short time after the robbery.

Watts, Peart, Hodges and Martin ultimately entered their respective pleas of guilty to a second information charging each with robbery, contrary to K.S.A. 21-3426. Watts was sentenced to a minimum term of one year and a maximum term of twenty years, with execution of the sentence suspended and five years probation imposed in lieu thereof. Peart was sentenced to a minimum term of one year and a maximum of twenty years and his request for probation was denied. Martin was placed on five years probation. Hodges was sentenced to a minimum term of two years and a maximum term of twenty years, with execution of the sentence suspended and two years probation granted. Thus, Peart was the only defendant not placed on probation other than plaintiff.

On May 16, 1975, plaintiff entered a plea of guilty to one count of aggravated robbery, contrary to K.S.A. 21-3427. The trial court thereupon sentenced plaintiff to a minimum term of fifteen years and a maximum term of life. Plaintiff's attorney thereafter filed a motion for reduction of sentence and request for probation which were denied on September 12, 1975. On October 2, 1978, plaintiff filed the instant action pursuant to K.S.A. 60-1507, alleging that (1) the trial court abused its discretion in its imposition of the maximum sentence under K.S.A. 21-3427 against plaintiff in view of the treatment of the four other codefendants; (2) the trial court gave no reasons or justification for plaintiff's sentence; and (3) plaintiff was denied effective assistance of counsel in that neither his attorney nor the trial court advised him of his right to appeal or to pursue his post-conviction remedies. The trial court denied relief and this appeal followed.

The primary thrust of plaintiff's appeal is that the court erred in denying relief in that the trial court's imposition of sentence constituted an abuse of discretion and is contrary to the constitutional prohibition of cruel and unusual punishment. The plaintiff's claim regarding ineffective assistance of counsel is clearly

without merit. The record discloses the trial court informed plaintiff that he waived his statutory right to a direct appeal upon his guilty plea. At any rate, failure to advise a defendant of his right to appeal does not amount to a denial of a constitutional guarantee. See *Tuscano v. State,* 206 Kan. 260, 261, 478 P.2d 213 (1970), and cases cited therein. We turn to an examination of plaintiff's claim regarding his sentence.

The applicable statutes, in force at the time of the plaintiff's sentencing, were K.S.A. 21-4601 and 21-4606. 21-4601 provides:

"This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, or fine whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law."

## 21-4606 provides:

"(1) In sentencing a person to prison, the court, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, shall fix the lowest minimum term which, in the opinion of said court, is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime.

"(2) The following factors, while not controlling, shall be considered by the court in fixing the minimum term of imprisonment:

"(*a*)  The defendant's history of prior criminal activity;

"(*b*)  The extent of the harm caused by the defendant's criminal conduct;

"(*c*)  Whether the defendant intended that his criminal conduct would cause or threaten serious harm;

"(*d*)  The degree of the defendant's provocation;

"(*e*)  Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

"(*f*)  Whether the victim of the defendant's criminal conduct induced or facilitated its commission;

"(*g*)  Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained."

In *State v. Coutcher,* 198 Kan. 282, 288, 424 P.2d 865 (1967), the court quoted the following passage from *Weems v. United States,* 217 U.S. 349, 368, 54 L.Ed. 793, 30 S.Ct. 544 (1910):

" 'What constitutes a cruel and unusual punishment has not been exactly decided. It has been said that ordinarily the terms imply something inhuman and barbarous, torture and the like. *McDonald v. Commonwealth,* 173 Massachusetts, 322. The court, however, in that case conceded the possibility "that imprisonment

in the State prison for a long term of years might be so disproportionate to the offense as to constitute a cruel and unusual punishment." . . .' "

Our earlier decisions noted that reviewing courts would rarely interfere with a sentence on the ground that it violates the cruel and unusual punishment prohibition. See, *e.g., In re MacLean,* 147 Kan. 678, 681, 78 P.2d 855 (1938). More recent decisions have enunciated the general rule as follows:

" 'When a sentence is fixed by the trial court within permissible limits of the applicable statutes the sentence is not erroneous. In the absence of special circumstances showing an abuse of judicial discretion it cannot be determined on appeal that such a sentence is excessive or so disproportionate to the offense as to constitute cruel and unusual punishment.' " *State v. Steward,* 219 Kan. 256, 270, 547 P.2d 773 (1976).

*Cf. State v. Foy,* 224 Kan. 558, 569, 582 P.2d 281 (1978); *State v. Pettay,* 216 Kan. 555, Syl. ¶ 4, 532 P.2d 1289 (1975); *State v. Smith,* 3 Kan. App. 2d 179, 182, 591 P.2d 1098 (1979).

Plaintiff concedes his sentence is within the applicable statutory bounds but argues that the trial court abused its discretion in imposing the maximum sentence under K.S.A. 21-4501(*b*) in view of the disparate and more lenient sentences received by his codefendants and in light of the lack of reasoning which accompanied the trial court's imposition of sentence.

Three recent cases provide guidance in assessing plaintiff's claims. *State v. Coe,* 223 Kan. 153, 574 P.2d 929 (1977), and *State v. Buckner,* 223 Kan. 138, 574 P.2d 918 (1977), are companion cases in which each defendant appealed from convictions of multiple counts of aggravated robbery. Each defendant contended the trial court abused its discretion in imposing a ninety years to life sentence pursuant to the habitual criminal act, K.S.A. 21-4504. The Kansas Supreme Court vacated both defendants' sentences and remanded for resentencing. In *Buckner* the court noted that the presentence report and evaluation from the Kansas Reception and Diagnostic Center were overall favorable to the defendant and that the multiple convictions derived from a single incident. The primary emphasis in *Buckner,* however, is on the desirability of including a statement of reasons accompanying a severe sentence.

"The legislature has dictated, in K.S.A. 21-4606, certain minimum factors to be considered in imposing sentence. Although the statute may not require it, we feel that when the sentence exceeds the minimum, it is better practice for the trial court to make, as part of the record, a detailed statement of the facts and factors

considered by the court in imposing sentence. Such a record would be of great assistance to the appellate courts in determining whether the trial court has abused its discretion." 223 Kan. at 151.

*Cf. State v. Williams,* 226 Kan. 688, 697, 602 P.2d 1332 (1979).

In *Coe,* the Court vacated the trial court's ninety years to life sentence, finding it to be so arbitrary and unreasonable as to constitute an abuse of judicial discretion. The court emphasized the favorable presentence reports which indicated defendant to be a fairly well adjusted individual with substantial chances of being a successful probationer. The court also emphasized that the two felony convictions by which defendant's sentence was enhanced resulted in his probation and subsequent incarceration at the Kansas State Industrial Reformatory for less than one year.

A recent case which confronts the present issue is *State v. Goering,* 225 Kan. 755, 594 P.2d 194 (1979). The court therein vacated defendant's consecutive sentences, emphasizing the disparity in sentences received by Goering's codefendants, Thach and Keener, in comparison to their respective culpability in the criminal activity:

"Sandra Goering was not armed during the occurrences related above. She had no weapon. She fired no shots. Her sole activity was that as the driver of the getaway vehicle. The crime was severe, and defendant's participation therein cannot be excused, justified or condoned. The entire occurrence was reprehensible.

"However, upon a review of the entire record, it is readily apparent that the conduct of Sandra Goering was the least culpable of the three participants. We can see no reasonable basis upon which the sentence imposed upon her should exceed by several times the sentence imposed upon Thach. We conclude that the sentence imposed is excessive." 225 Kan. at 762.

The court also noted the trial court's lack of justification or reasoning accompanying the imposition of sentence.

In the present case, the trial court was advised of the factual basis underlying plaintiff's guilty plea. In essence, the facts related by the county attorney indicated that three of the five codefendants were armed, although plaintiff's counsel informed the trial court plaintiff's gun was actually a toy. Although plaintiff and Watts apparently threatened the patrons of the bar, the county attorney noted that no one was harmed. The plaintiff was twenty years old at the time of the guilty plea hearing with no prior felony convictions. The county attorney advised the trial court that at the time of the hearing felony detainers were filed in

three other Kansas counties against plaintiff, charging him with aggravated robbery, criminal damage to property and aggravated assault. The record does not indicate the ultimate disposition of any of these charges.

Upon the trial court's invitation, plaintiff stated that he and the other participants ". . . had been drinking, and we was driving around, and we just all got a wild notion." The court thereupon entered the sentence and ordered plaintiff to the Kansas Reception and Diagnostic Center for evaluation. The report subsequently received from K.R.D.C. indicated plaintiff to be in normal physical health and noted that his participation in the crime seemed "passive" and was induced by his more daring friends and under the influence of drugs. Upon plaintiff's motion for reduction of sentence after the evaluation was completed, the trial court denied the request and stated:

"The Court was, I believe, quite well informed as to the roles that each of the defendants played in this armed robbery; and while the—there are elements of the report from the Reception Center that indicate this person was probably not the principal leader at the time of the robbery, he was certainly in the front row of instigation of the whole operation that night. And the Court tried to take into consideration all of the elements that you mentioned, of course, with the exception of the Diagnostic Center report at the time sentence was passed. The application for reduction and for immediate probation is denied."

No further reasons appear in the record which would further explain the trial court's imposition of the maximum sentence.

We find the trial court's lack of reasoning to be particularly troublesome. While courts now are required to state the reasons for imposing a sentence of commitment under K.S.A. 1979 Supp. 21-4603(3), the trial court in the present case was not bound by such a statutory duty. Nevertheless, our reading of such cases as *State v. Buckner,* 223 Kan. 138, and *State v. Coe,* 223 Kan. 153, indicates to us that the lack of reasoning, even when not technically required, is a proper factor to be considered in determining whether a particular sentence constitutes an abuse of the trial court's judicial discretion. Additionally, we find the disparity in sentencing between plaintiff and his codefendants to be a persuasive factor in finding an abuse of discretion. While the disparity in sentences in the present case is not as marked as the circumstances presented in *State v. Goering,* 225 Kan. 755, we find no justification in the record for imposing a minimum sentence upon plaintiff which is fifteen times greater than that

imposed upon Peart, even though both men were tagged as the primary instigators of the crime. It is also to be noted that plaintiff apparently was not offered similar plea bargaining possibilities as his codefendants, in violation of ABA Standards, Pleas of Guilty § 3.1 (c) (Approved Draft, 1968), which provides that "[s]imilarly situated defendants should be afforded equal plea agreement opportunities." We likewise find the length of plaintiff's sentence disturbing, particularly in light of the fact that plaintiff had no prior felony convictions or incarcerations. While we certainly agree with the trial court as to the severity of the crime committed, we cannot say that the present state of the record supports its imposition of the maximum sentence possible.

We do not hold that the trial court abused its discretion at the time it originally sentenced the plaintiff. At that time the court had before it only his plea of guilty to aggravated robbery. However, the trial court failed to reduce plaintiff's sentence upon his motion for reduction of sentence (K.S.A. 1979 Supp. 21-4603). It was at that point that the trial court abused its discretion since the court was then aware of the ultimate disposition of sentences received by the codefendants involved and of plaintiff's evaluation from K.R.D.C.

Considering plaintiff's age at the time of the offense, the relative extent of his involvement in the crime, the fact that the offense was his first felony conviction, the lack of reasoning supporting the trial court's imposition of sentence, the much more lenient sentences received by the other codefendants, the length of the sentence imposed, the favorable evaluation from K.R.D.C., the disparity in plea agreement offers, and the fact that the trial court failed to modify plaintiff's sentence when all available information concerning the other codefendants' respective dispositions and plaintiff's psychological evaluation was known, we conclude that the trial court abused its discretion in failing to modify plaintiff's sentence.

The judgment is reversed and the case is remanded to the trial court with directions to vacate plaintiff's sentence and to resentence him pursuant to K.S.A. 21-4601 and K.S.A. 1979 Supp. 21-4603(2).

SWINEHART, J., dissenting. I fail to agree with the majority's conclusion that the trial court's imposition of sentence as to plaintiff constitutes an abuse of discretion. The following factors persuade me to dissent from the above result:

(1)   The trial court's sentence was within permissible statutory bounds;

(2)   Plaintiff was the only person charged who pleaded guilty to the greater offense of *aggravated* robbery and it does not appear that his plea was other than intelligent, voluntary and knowing;

(3)   The trial court could have properly viewed the evaluation from K.R.D.C. as indicating that plaintiff's involvement in the crime was highly culpable and inexcusable, considering his above average intelligence and extended history of voluntary drug and alcohol abuse;

(4)   The severity of the crime committed, especially considering that plaintiff's guilty plea to aggravated robbery necessarily included an admission of being armed with a dangerous weapon;

(5)   While the majority makes much of the fact that the trial court failed to explicitly support its imposition of sentence with appropriate reasoning, the record indicates the trial court asked several questions, at the time of receiving plaintiff's guilty plea, regarding factors to be considered pursuant to K.S.A. 1979 Supp. 21-4603(3) and the trial court's appropriate rationale for imposing sentence must be inferred therefrom;

(6)   Plaintiff's situation is readily distinguishable from the cases cited by the majority wherein an abuse of discretion was found;

(7)   The question of whether a trial court abused its discretion should be considered from the time of sentencing, *not* at the time of sentence modification.

Although the trial court's exercise of discretion in the present case appears to be considerably less than recommendable, I cannot state, as the majority does, that no reasonable person would take the view adopted by the trial court.